*Rucker v. Giffen*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2020
No. 20-1318

**ANTHONY RUCKER,**
*Plaintiff-Appellant,*

v.

**ROBBIN GIFFEN, RONA SCOTT, ANDREA SMITH, NIKKI RUSH,
BURTON FLETCHER, KAREN HAMM, STEVEN HOLDEN,
MARQUERIETE WIRTH, AND JOSEPH KHOURI,**
*Defendants-Appellees.**

---

On Appeal from the United States District Court
for the Western District Of New York

---

SUBMITTED: MARCH 5, 2021
DECIDED: MAY 6, 2021

---

Before:    LEVAL, CABRANES, and MENASHI, *Circuit Judges*.

Plaintiff-Appellant Anthony Rucker appeals, *pro se*, from the dismissal of his suit for failure to exhaust available administrative

---

* The Clerk of Court is directed to amend the caption as set forth above.

remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. Rucker filed suit under 42 U.S.C. § 1983 alleging that officials at the Monroe County Jail denied him adequate medical care and subjected him to cruel and unusual punishment during his pretrial confinement. Rucker alleges that he experienced severe medical distress but was denied medical treatment for days. He was ultimately admitted to the hospital, where he was found to be in a critical condition. He was placed in a coma and underwent serious surgeries. His hospitalization lasted over a month. Around a year after the incident, Rucker filed a grievance against the officials. The prison returned his grievance unprocessed and informed him that, in accordance with the Monroe County Jail's grievance procedures, the prison would not entertain any grievance filed more than five days after the incident giving rise to the grievance. Rucker argues that the administrative procedures were unavailable to him because he was hospitalized and in critical medical condition for over a month and therefore could not have filed a grievance within that five-day timeframe.

We agree. Administrative remedies are "unavailable" when (1) an inmate's failure to file for the administrative remedy within the time allowed results from a medical condition, and (2) the administrative system does not accommodate the condition by allowing a reasonable opportunity to file for administrative relief. Administrative remedies were unavailable to Rucker because he was hospitalized and in a critical medical condition during—and well past—the five-day timeframe to file a grievance according to the Monroe County Jail's grievance procedures, and because the prison made clear that it would not process any grievance filed past that five-

2

day timeframe. We **REVERSE** the district court's judgment and **REMAND** for further proceedings.

---

Anthony Rucker, *pro se*, Coxsackie, NY.

Paul A. Sanders, Barclay Damon LLP, *for Defendants-Appellees,* Rochester, NY.

---

MENASHI, *Circuit Judge*:

Plaintiff-Appellant Anthony Rucker alleges that during his pretrial detention at the Monroe County Jail in 2017 he experienced extreme medical distress, which was ignored and which led to his hospitalization for just over a month. In 2018, Rucker filed a grievance according to the administrative procedures set forth in the Monroe County Jail's Inmate Handbook. According to those procedures, inmate grievances must be filed within five days of the incident giving rise to the grievance. Rucker was informed by letter that his grievance would not be processed because the five-day time period to file his grievance had passed.

Rucker then filed suit, *pro se*, against various medical professionals at the jail ("defendants-appellees") and several jail deputies ("jail defendants") under 42 U.S.C. § 1983. In his suit, Rucker alleges that the defendants-appellees denied him adequate medical care and subjected him to cruel and unusual punishment during his pretrial confinement at the Monroe County Jail in violation of his constitutional rights.

3

The district court (Geraci, J.) dismissed the action against the jail defendants with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). The defendants-appellees then moved to dismiss the suit arguing, *inter alia*, that Rucker failed to exhaust available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The district court granted the defendants-appellees' motion to dismiss on the ground that Rucker failed to exhaust available administrative remedies and did not reach the question of whether Rucker adequately stated a constitutional claim. Rucker timely appealed the dismissal of his suit only against the defendants-appellees.

We disagree with the district court that Rucker failed to exhaust available administrative remedies. Rucker could not file a grievance during the five-day grievance-filing period because he was in a critical medical condition for which he was hospitalized, and the jail refused to process any grievance filed after that five-day timeframe without accommodating his medical condition. Under these circumstances, administrative remedies were unavailable to Rucker.

We hold that administrative remedies are "unavailable" when (1) an inmate's failure to file for the administrative remedy within the time allowed results from a medical condition, and (2) the administrative system does not accommodate the condition by allowing a reasonable opportunity to file for administrative relief. Accordingly, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings.

4

## BACKGROUND

In reviewing the district court's grant of the motion to dismiss, we accept the factual allegations in the amended complaint as true. *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016).

According to the amended complaint, on June 10 or June 14, 2017, Rucker began to experience extreme stomach pain, dizziness, nausea, shortness of breath, dehydration, and weakness, and he asked to be taken to the hospital. He reported his symptoms to a jail deputy on June 10 or June 14, but he was told to "wait for the nurse at the morning med pass." Am. Compl. at 8, *Rucker v. Fletcher*, No. 18-CV-6575, 2020 WL 1703240 (W.D.N.Y. Apr. 8, 2020), ECF No. 13 [hereinafter Am. Compl.] (capitalization omitted). When he notified the morning med pass nurse of his medical distress and asked to see a doctor, she denied his request and gave him an asthma pump. Rucker complained again to the deputy and the nurses in the afternoon and evening but was repeatedly denied access to a doctor.

Despite his extreme medical distress, Rucker was denied medical treatment for days. On June 21, 2017, Rucker was finally seen by defendant-appellee Dr. Burton Fletcher. Rucker explained his symptoms to Dr. Fletcher and said he felt like he was dying. Dr. Fletcher gave him asthma treatment and put him in a medical observation cell. When Rucker woke up the next day, he was lying on the floor and was in so much pain that he could not move. Dr. Fletcher observed that Rucker was pale from dehydration but still did not permit Rucker to go to the hospital. Rucker threw up and "used the bathroom on him self [*sic*]" for three days; he begged nurses, doctors, and deputies to take him to the hospital. Am. Compl. at 10.

Rucker was finally taken to a hospital on June 23, 2017, by which time he was passing in and out of consciousness. He was admitted to the hospital for diabetic ketoacidosis. At the hospital, medical professionals also determined that he had "peritonitis, portal venous gas, and p[n]eumobilia" requiring an "exploratory laparotomy and small bowel[] resection." Am. Compl. at 11. The doctors told his family he had only a 10 percent chance of survival with or without surgery.

On June 25, 2017, Rucker underwent surgery to have 200 centimeters of his intestine removed, resulting in "short gut syndrome." Am. Compl. at 11. His pancreas became infected and was removed. He was placed in a coma for the surgeries, and afterward he was transferred to an intensive care unit for further management. Rucker was also diagnosed with diabetes and alleges that he now takes more than 15 pills per day. Rucker was ultimately in the hospital for a month and two days. Since this medical incident, he has had embarrassing digestive issues requiring him to use the bathroom many times each day, and he feels "down and depressed all the time" as he struggles to cope with "the new way that [he has] to live." Am. Compl. at 35.

On July 23, 2018, Rucker filed a grievance describing the June 2017 events. As relevant here, Rucker alleges—in a sworn statement accompanying his grievance—that due to the severity of his medical condition at the time, he "did not have time to write about [the June 2017 events] at all" but he "did tell every nurse and deputy working during the time[,] every day," and any grievance he could have filed "would have been [too] late because [he] was in the hospital for a month and two days." Am. Compl. Ex. 1 at 7, *Rucker*, 2020 WL 1703240, ECF No. 1-1 [hereinafter Am. Compl. Ex. 1]. The prison

6

responded by letter informing Rucker that the prison would not process his grievance because "[a]n inmate must file a grievance within five days of the date of the act or occurrence giving rise to the grievance" and Rucker's "complaint was not within the 5 day timeframe." Am. Compl. Ex. 1 at 14.

On August 8, 2018, Rucker filed suit against various medical professionals and jail deputies at the Monroe County Jail under 42 U.S.C. § 1983 alleging that they denied Rucker medical care and subjected him to cruel and unusual punishment while he was in pretrial detention. In a June 2019 screening order, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), the district court dismissed the action against the jail defendants with prejudice because there was no basis to conclude that the jail defendants should have challenged the nurses' or Dr. Fletcher's medical decisions. **[**The district court further noted, but did not decide, that Rucker may not have exhausted available administrative remedies. Rucker filed his operative amended complaint on February 6, 2019.

On November 26, 2019, the defendants-appellees moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and for failure to exhaust available administrative remedies as required by the PLRA. Rucker opposed the motion arguing, *inter alia*, that administrative remedies were not available to him due to his medical condition and hospitalization during the grievance filing period.[1]

---

[1] Rucker also argued that grievance procedures were unavailable to him because he allegedly did not receive a copy of the Monroe County Jail's Inmate Handbook, which explains the administrative procedure for filing

7

On April 8, 2020, the district court granted the defendants-appellees' motion to dismiss. The district court reasoned that there is no "special circumstances" exception to the PLRA's exhaustion requirement and Rucker's allegations did not suggest that the grievance procedures were not available to him under any of the three categories of unavailability identified by the Supreme Court in *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016). The district court therefore concluded that Rucker's critical medical condition and subsequent hospitalization did not excuse his failure to file a grievance within five days of the incident giving rise to his grievance.

Rucker timely appealed.[2]

## DISCUSSION

### I

We review the grant of a motion to dismiss for failure to exhaust administrative remedies *de novo* while accepting the factual allegations as true. *Williams*, 829 F.3d at 121-22. Because Rucker brought his claim and this appeal *pro se*, we review the appeal with "special solicitude," interpreting the complaint to raise the "strongest claims that it suggests." *Id.* at 122.

According to the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] … by a prisoner

---

a grievance, and therefore did not know that he had to file a grievance. The district court dismissed this argument, concluding that the grievance procedures were available to Rucker from the face of the complaint because Rucker ultimately filed a grievance.

[2] On appeal, Rucker does not challenge the district court's dismissal of his claim against the jail defendants.

8

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (quoting 42 U.S.C. § 1997e(a)). Exhaustion must be in "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *see also Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) ("Alerting the prison officials as to the nature of the wrong for which redress is sought does not constitute 'proper exhaustion' under *Woodford*.") (internal quotation marks, alterations, and citation omitted). However, a prisoner need not specifically plead or demonstrate exhaustion in the complaint because "failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Williams*, 829 F.3d at 122 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

In *Ross*, the Supreme Court explained that aside from the "significant qualifier" that "the remedies must indeed be 'available' to the prisoner," the text of the PLRA "suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" 136 S. Ct. at 1856. Therefore, the Court concluded that prisoners are exempt from the exhaustion requirement only when the grievance procedures are not "capable of use to obtain some relief for the action complained of" such that the administrative remedies are "unavailable." *Id.* at 1858-59 (internal quotation marks omitted).

As relevant to the case before it, the Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. Those circumstances are when: (1) the grievance process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the process

is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

After *Ross*, we concluded that the New York State Department of Corrections and Community Supervision regulations, which established grievance procedures, fell into one of the three categories of unavailability identified in *Ross*. *Williams*, 829 F.3d at 119. We held that although the grievance procedures were "technically available" to the plaintiff, the procedures were "so opaque and confusing" as effectively to be unavailable. *Id.* at 126. We noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive" because the Supreme Court focused its analysis on circumstances "relevant" to the facts before it. *Id.* at 123 n.2 (citing *Ross*, 136 S. Ct. at 1859). However, we declined to identify other circumstances that might render a technically available administrative remedy effectively unavailable. *Id.*

## II

In this appeal, Rucker primarily argues that his medical condition prevented him from filing a grievance within five days of the incident giving rise to his grievance. Because Rucker's severe medical condition precluded timely filing of his grievance and the prison unequivocally stated that it would not process Rucker's grievance because it was filed after the grievance filing period had closed, the grievance procedures, "although officially on the books, [were] not capable of use to obtain relief." *Ross*, 136 S. Ct. at 1859. Therefore, we conclude that the grievance procedures were unavailable to Rucker.

10

Before *Ross* was decided, the Fifth Circuit held that administrative remedies are unavailable when "(1) an inmate's untimely filing of a grievance is because of a physical injury and (2) the grievance system rejects the inmate's subsequent attempt to exhaust his remedies based on the untimely filing of the grievance." *Days v. Johnson*, 322 F.3d 863, 868 (5th Cir. 2003), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In *Days*, the plaintiff fell and sustained multiple fractures to his hand. *Id.* at 864. He argued that administrative remedies were unavailable to him because he had broken his writing hand and could submit a grievance only when his hand had healed, which was after the grievance filing period had closed. *Id.* at 865. The prison would not process his grievance because it was deemed untimely. *Id.* As in *Ross*, the court in *Days* focused on the PLRA's qualifier that "the remedies must indeed be 'available' to the prisoner," *Ross*, 136 S. Ct. at 1856, and concluded that "because of [the plaintiff's] injury, exhaustion of his administrative remedies by timely filing a grievance was personally unobtainable," *Days*, 322 F.3d at 867. District courts have continued to recognize the *Days* rule after *Ross*.[3]

We agree with the Fifth Circuit that a prisoner who is injured or undergoing significant medical treatment faces a substantial obstacle to making use of administrative remedies, and if the prison

---

[3] *See, e.g.*, *Hulsey v. Jones*, No. 6:19-CV-108, 2020 WL 8832501, at *5-6 (E.D. Tex. July 13, 2020), *report and recommendation adopted,* No. 6:19-CV-108, 2021 WL 363589 (E.D. Tex. Feb. 3, 2021); *Glenn v. Mataloni*, No. 1:20-CV-69, 2020 WL 7027597, at *20 (M.D. Pa. Nov. 30, 2020); *Skinner v. Haley*, No. 315-CV-340, 2019 WL 5582233, at *5-6 (D. Nev. Sept. 26, 2019), *report and recommendation adopted sub nom. Skinner v. Pfister*, No. 315-CV-340, 2019 WL 5576943 (D. Nev. Oct. 29, 2019).

will not accommodate such injury or medical treatment but will treat the grievance as untimely, administrative remedies become effectively unavailable. In this case, Rucker faced a substantial obstacle to filing a grievance during the five-day grievance filing period. Because of the defendants-appellees' alleged failure to provide necessary medical care, Rucker experienced extreme medical distress for days, was admitted to the hospital for over a month during which he was put in a coma and underwent surgeries that nearly caused his death. Rucker's medical condition and his extended hospitalization outside of the prison presented such obstacles to filing a grievance that the grievance procedures were "incapable of use" during this period. *Ross*, 136 S. Ct. at 1854. Rucker is therefore not barred from filing this action because he failed to file his grievance while hospitalized.

It is true that Rucker did not file a grievance until almost a year after his hospitalization, but that does not make a difference in this case. The letter from the prison to Rucker was clear—any failure to file a grievance within five days of the alleged incident giving rise to the grievance would render it untimely. The prison accordingly refused to process Rucker's grievance because it was "not within the 5 day timeframe." Am. Compl. Ex. 1 at 14. The grievance procedures in place at the prison would not have considered Rucker's grievance to be timely—and would not have entertained his complaints—even if the grievance had been filed more promptly following Rucker's

12

return from the hospital.[4] Under these circumstances, the grievance procedures were unavailable to him.

We therefore hold that administrative remedies are "unavailable" when (1) an inmate's failure to file for the administrative remedy within the time allowed results from a medical condition, and (2) the administrative system does not accommodate the condition by allowing a reasonable opportunity to file for administrative relief. Because Rucker's medical condition and hospitalization imposed a substantial obstacle to filing a grievance and because the prison notified him that his failure to file within the five-day timeframe rendered his grievance untimely, we conclude that Rucker did not have available administrative remedies to exhaust.[5]

\* \* \*

For these reasons, we **REVERSE** the district court's judgment and **REMAND** for the district court to consider Rucker's claim on the merits.

---

[4] The defendants-appellees do not argue that Rucker should have filed a grievance during a shorter time period following his return from the hospital and do not argue that Rucker's grievance would have been processed if he had.

[5] Because we hold that administrative remedies were unavailable to Rucker because of his medical condition, we do not address his alternative argument that he did not know he had to file a grievance within five days after the incident because he did not receive the Inmate Handbook.