RENDERED:  JUNE 10, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1565-MR

KEVIN PEARSON                                                                          APPELLANT

APPEAL FROM LYON CIRCUIT COURT
v.        HONORABLE CLARENCE A. WOODALL, III, JUDGE
ACTION NO. 17-CI-00121

CORRECT CARE SOLUTIONS AND
BRUCE BAUER                                                                             APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; K. THOMPSON AND L. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Kevin Pearson, an inmate at the Kentucky State

Penitentiary (KSP), appeals from the Lyon Circuit Court's dismissal of his medical

malpractice complaint against Correct Care Solutions and Bruce Bauer

(collectively medical providers) for failure to exhaust administrative remedies.  We

affirm as we are confident that complaints about medical treatment in prison

qualify as conditions of confinement, exhaustion is required whether or not the grievance process can result in any remedy, and that by the time Pearson filed his first grievance he was no longer incapacitated and needed, at minimum, to exhaust that grievance process prior to filing a complaint before the circuit court.

On August 5, 2016, Pearson filed his first grievance which stated that Nurse Bauer had failed to provide him with adequate medical care on May 28, May 30, May 31, June 1, and June 2, 2016, when he complained of chest pain and difficulty breathing. Pearson stated that Bauer kept telling Pearson that Bauer could not find anything wrong with Pearson, and that at his last visit Bauer told Pearson that he could not see a doctor until June 6, 2016.

Pearson explained that when seen by another provider on June 3, 2016, after getting an X-ray

> I was immediately sent to Baptist Health Paducah.
> Within minutes of me getting to Baptist a Dr. cut a hole
> in my side and put in a drain tube. I had a 7½ hour
> surgery and was at Baptist until 6-17-16[.] I have been in
> Medical Housing unit every [sic] since[.] There must be
> some protocol in place that doesn't take a week to be
> seen by a Dr. for chest pain and difficulty breathing. . . .
>
> I have been in the hospital and or Med. Housing Unit
> since 6-3-16[.] [W]ould you please file this[?] I have
> not had access to any grievance aid or legal help.

Pearson requested that an investigation be made as to why he was not able to get more immediate treatment and why he would have to wait so long to see a doctor given his condition.

On August 8, 2016, Pearson received notice that his grievance was rejected as untimely because it was not filed within five days from the date of the incident as required by Kentucky Corrections Policies and Procedures (CPP) 14.6(II)(J)(1)(a)(2).

Rather than appeal that decision, on August 15, 2016, Pearson filed a second grievance. He complained that the first grievance should not have been rejected for untimeliness, arguing that he could not file a grievance while at the hospital and his "situation" was still ongoing.

As to this second grievance, Pearson took all the necessary steps to exhaust it. At each step, Pearson's grievance was denied as untimely, with some of the decision makers indicating he had an opportunity to initiate a grievance when he returned to KSP.[1] The Commissioner agreed, explaining:

> Though you were in the hospital from 6-3-16 you
> returned to the facility on 6-17-16 and could have still
> filed a grievance over the incident. You chose not to file

---

[1] In the informal resolution, it was stated: "Grievant has had opportunity to request forms from CTO's McKing rounds[.]" The Grievance Committee agreed with this resolution as the grievance was filed past the five-day deadline. The Warden indicated Pearson could have initiated a grievance once he returned to KSP's medical hospital unit as "he had several conversations with his CTO, UA and Grievance Coordinator."

the grievance until over 5 weeks later. CPP 14.6 states that a grievance over a specific incident shall be filed within 5 business days of the occurrence. You well exceed[ed] that window.

On September 26, 2017, Pearson filed his *pro se* complaint before the Lyon Circuit Court, arguing that the medical providers failed to meet the standards of care provided in CPP 13.2 by failing to diagnose his life-threatening plural effusion, resulting in his injury.

The medical providers filed a motion to dismiss, arguing that Pearson failed to exhaust his administrative remedies. The circuit court agreed and on July 30, 2019, Pearson's complaint was dismissed for failure to state a claim pursuant to Kentucky Rule of Civil Procedure (CR) 12.02(f). The circuit court noted that Pearson's "argument for the deadline to be equitably tolled might be more persuasive if he had only missed it by a few days. Here he missed the grievance deadline by five weeks."

Pearson's first argument is that he did not need to exhaust his administrative remedies prior to filing suit as his medical malpractice claim does not relate to a condition of confinement. He argues he is pursuing a common law claim for damages, he is not complaining he was deprived of medical treatment by KSP, and he cannot receive any administrative relief on this issue.

Kentucky Revised Statute (KRS) 454.415 states in relevant part as follows:

> (1) No action shall be brought by or on behalf of an inmate, with respect to:
>
> . . .
>
> (d) A conditions-of-confinement issue;
>
> until administrative remedies as set forth in the policies and procedures of the Department of Corrections, county jail, or other local or regional correctional facility are exhausted.
>
> (2) Administrative remedies shall be exhausted even if the remedy the inmate seeks is unavailable.
>
> (3) The inmate shall attach to any complaint filed documents verifying that administrative remedies have been exhausted.
>
> (4) A court shall dismiss a civil action brought by an inmate for any of the reasons set out in subsection (1) of this section if the inmate has not exhausted administrative remedies[.]

Although Kentucky Courts have not specifically ruled that medical care in prison is a condition of confinement, the United States Supreme Court opined in *dicta* in *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321, 2326-27, 115 L.Ed.2d 271 (1991), that "the medical care a prisoner receives is just as much a 'condition' of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and the protection he is afforded against other inmates." It also explained that "if an individual prisoner is deprived of needed medical treatment, that is a condition of *his* confinement, whether or not

the deprivation is inflicted upon everyone else." *Id.* at 300 n.1, 111 S.Ct. at 2325 n.1. Federal courts have explicitly held that the type of medical treatment received in prison, or the lack thereof, is a complaint about prison conditions. *Witzke v. Femal*, 376 F.3d 744, 751 (7th Cir. 2004); *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999); *Price v. Shinn*, 178 F. App'x 803, 804 n.2 (10th Cir. 2006).

It does not matter that the grievance process could not result in monetary damages against the medical providers, as pursuant to KRS 454.415(2) "[a]dministrative remedies shall be exhausted even if the remedy the inmate seeks is unavailable." Because Pearson did not exhaust his first grievance process, he could not attach to his complaint "documents verifying that administrative remedies have been exhausted" as required in KRS 454.415(3). Accordingly, the circuit court was required to dismiss Pearson's complaint for failure to exhaust his administrative remedies pursuant to KRS 454.415(4). *See Houston v. Fletcher*, 193 S.W.3d 276, 278 (Ky.App. 2006) (finding no entitlement to appellate review of claims where inmate did not establish exhaustion of administrative remedies under the same language in a previous version of KRS 454.415). *See also Hensley v. Commonwealth*, 355 S.W.3d 473, 475 (Ky.App. 2011).

Pearson's second argument is that his grievance was timely as he was unable to file a grievance until August 5, 2016, because of his medical condition, explaining that he was in critical condition at the hospital from June 3-17, 2016,

and that once returned to KSP he was in the medical housing unit (MHU) "bedridden and unable to ambulate around and care for his own needs." He explained that while in the MHU, "several times" he "requested pen, paper and grievance material" but was not able to have anyone bring him a grievance form until August 5, 2016.[2] Pearson states that he was not released from the MHU until September 8, 2016; he argues the time period to file a grievance should have been tolled during this time. He requests that we remand for an evidentiary hearing as to whether his grievance should be tolled.

We recognize that our doctrine of equitable tolling might offer relief in such a situation where incapacity or actions by the prison prevent timely filing. "Under the doctrine, the critical inquiry is 'whether the circumstances preventing a petitioner from making a timely filing were both beyond the petitioner's control and unavoidable despite due diligence.'" *Lee v. Haney*, 517 S.W.3d 500, 505 (Ky.App. 2017) (quoting *Commonwealth v. Carneal*, 274 S.W.3d 420, 429 (Ky. 2008)).

While Pearson's claim of incapacity to file a grievance within five days of the denial of appropriate medical care does give us pause, and we recognize that if someone is completely incapacitated it would not be reasonable to

---

[2] We note that these allegations were not supported by an affidavit from Pearson but are simply arguments made by his counsel.

strictly enforce the five-day deadline,[3] we note that Pearson's excuses for being unable to file a grievance all pertain to the period before he filed his first grievance on August 5, 2016. Pearson offers no explanation as to why he did not exhaust his administrative remedies through this first grievance, other than the fact that he was still in the MHU, or why the second grievance, filed on August 15, 2016, should be treated as timely.

We will not assume that being housed in the KSP's MHU is synonymous with being legally incompetent and tolls the time needed to file a grievance. Additionally, filing a second grievance seven days after the first grievance was rejected is not an appropriate way to get around a missed deadline for pursuing further redress on the first grievance.

We believe the fact that Pearson filed a cogent grievance on August 5, 2016, is at least some evidence that he was capable of fulfilling the subsequent process required to fully exhaust that grievance in the days that followed as

---

[3] *See generally Rucker v. Giffen*, 997 F.3d 88, 93-94 (2d Cir. 2021); *Days v. Johnson*, 322 F.3d 863, 867-68 (5th Cir. 2003), *overruled on other grounds by implication in Woodford v. Ngo*, 548 U.S. 81, 89, 126 S.Ct. 2378, 2385, 165 L.Ed.2d 368 (2006), *as recognized in Johnson v. Ford*, 261 F. App'x 752, 755-56 (5th Cir. 2008); *Braswell v. Corrections Corp. of America*, 419 F. App'x 622, 625-26 (6th Cir. 2011) (all discussing that administrative remedies are unavailable when an inmate cannot file for an administrative remedy within the deadline due to a medical condition). However, we note that these federal cases were interpreting the Prison Litigation Reform Act (PLRA), 42 United States Code (U.S.C.) § 1997e(a), which specifically states that exhaustion is required of "such administrative remedies as are available[.]" *See Ross v. Blake*, 578 U.S. 632, 642, 136 S.Ct. 1850, 1858-59, 195 L.Ed.2d 117 (2016) (discussing the import of that language).

required before filing the instant lawsuit. We need not decide whether Pearson's August 5th grievance should be considered timely pursuant to equitable tolling, as it is clear his August 15th grievance was not timely, and this is the only grievance he pursued to exhaustion.

Accordingly, we affirm the Lyon Circuit Court's dismissal of Pearson's complaint for failure to exhaust his administrative remedies.

ALL CONCUR.

BRIEF FOR APPELLANT:

Joseph Daniel Thompson
Somerset, Kentucky

BRIEF FOR APPELLEES:

William Ellis Sharp
Charles Matthew Rutledge
Louisville, Kentucky