*Jimenez v. Bogle*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21ˢᵗ day of March, two thousand twenty-five.

PRESENT:   Amalya L. Kearse,
                    Denny Chin,
                    Steven J. Menashi,
                              *Circuit Judges.*

_____

Juan J. Jimenez,

           *Plaintiff-Appellant*,

     v.                                                                      No. 24-323

Hugh Bogle, Derby Wancique, and Pascale Denis,

           *Defendants-Appellees*,

The City of New York, Dermot F. Shea, Vivene Simpson, and Glory Okezie,

           *Defendants*.[*]

_____

_____

[*] The Clerk of Court is directed to amend the caption as set forth above.

*For Plaintiff-Appellant*:    DONNA ALDEA (Alexander Klein, Melissa S. Horlick, *on the brief*), Barket Epstein Kearon Aldea & LoTurco, LLP, Garden City, New York.

*For Defendants-Appellees*:    LAUREN L. O'BRIEN (Richard Dearing, Deborah A. Brenner, *on the brief*), *for* Muriel Goode-Trufant, Acting Corporation Counsel of the City of New York, New York, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Kovner, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

On September 27, 2019, Juan Jimenez was arrested and charged under New York law with first-degree sexual abuse, forcible touching, endangering the welfare of a child, and second-degree sexual abuse of a minor after B.M., then twelve years old, accused Jimenez of inappropriately touching her. After a grand jury declined to indict Jimenez, he filed this lawsuit under 42 U.S.C. § 1983 against the City of New York and six individual defendants based on allegations of false arrest, malicious prosecution, and retaliation in violation of the First Amendment.

2

The district court granted the defendants' motions for summary judgment dismissing each claim. *See Jimenez v. City of New York*, No. 21-CV-6133, 2024 WL 198319 (E.D.N.Y. Jan. 18, 2024). On appeal, Jimenez argues only that the district court erred in granting summary judgment on his false arrest and malicious prosecution claims against Deputy Inspector Hugh Bogle, Sergeant Derby Wancique, and Detective Pascale Denis. Jimenez argues that the district court erred by determining that these defendants had arguable probable cause to arrest and prosecute him and thus were entitled to qualified immunity. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

**I**

We review a district court's grant of summary judgment de novo. *Garcia v. Heath*, 74 F.4th 44, 47-48 (2d Cir. 2023). The existence of probable cause is a complete defense to claims of false arrest and malicious prosecution. *See Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010); *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012). "Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). An officer has probable cause to arrest when the officer has "knowledge or reasonably

3

trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Fabrikant*, 691 F.3d at 214 (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). We engage in a similar inquiry for claims of malicious prosecution, considering whether, at the time the prosecution was initiated, the officers knew of "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021) (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)). "[I]n the absence of exculpatory facts which became known after an arrest, probable cause to arrest is a complete defense to a claim of malicious prosecution." *D'Angelo v. Kirschner*, 288 F. App'x 724, 726 (2d Cir. 2008).

Even when probable cause was lacking, an officer is entitled to qualified immunity if he had "arguable probable cause" to arrest and charge the defendant. *Dufort v. City of New York*, 874 F.3d 338, 354 (2d Cir. 2017). "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). The question

4

is "whether *any* reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful." *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016).

## II

We agree with the district court that the defendants had at least arguable probable cause to arrest and prosecute Jimenez based on B.M.'s "detailed and consistent account of sexual abuse." *Jimenez*, 2024 WL 198319, at *6. B.M. made three statements regarding Jimenez's conduct prior to his arrest. On September 25, 2019, B.M. reported to her school guidance counselor that Jimenez pinned her on a couch in his apartment, said he was going to "[d]ry [h]ump" her, grabbed her breast, and tried to kiss her, but "she pushed him away and said he ha[d] bad breath." App'x 83. She then made similar statements later that same day during her forensic interview. She said that on one occasion Jimenez grabbed her, hugged her, and tried to kiss her, but she stopped him by telling him that he had bad breath. She said that Jimenez would "grab[ her] butt for some reason" and would pull her pants and bra down and squeeze her breasts, and on one occasion he "dry humped" her on his bed. *Id.* at 514-16. Two days after her forensic interview, she

5

provided an account during an interview with an assistant district attorney and several officers that was similar to the account given in her forensic interview.

Despite some variations in her statements, these "largely consistent" allegations were "sufficient to establish arguable probable cause." *Doe v. Pisani*, No. 21-2847, 2023 WL 4240987, at *4 (2d Cir. June 29, 2023); *see also Heyliger v. Peters*, 771 F. App'x 96, 97-98 (2d Cir. 2019) (concluding that a victim's statement established probable cause when the statement was "coherent [and] described the location and details of the attack"). We cannot say that "'no reasonably competent officer' could have concluded, based on the facts known at the time of arrest, that probable cause existed" to arrest Jimenez. *Figueroa*, 825 F.3d at 100 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

**III**

Jimenez offers two reasons why B.M.'s statements did not establish arguable probable cause. First, Jimenez argues that B.M. "vow[ed] to lie" during the forensic interview, so any reasonable officer would have conducted a "further inquiry" to corroborate her allegations before arresting him. Appellant's Br. 21. We disagree. Officers may rely on a victim's testimony to establish probable cause "unless the circumstances raise doubt as to the person's veracity." *Betts v. Shearman*, 751 F.3d

6

78, 82 (2d Cir. 2014) (quoting *Panetta*, 460 F.3d at 395). Although B.M. admitted that she sometimes lied depending on the question asked, the forensic interviewer told B.M. "if there's something you don't want to answer[,] rather than telling me something that's not the truth, just tell me I don't wanna say that word." App'x 513. B.M. agreed that she would do so. The interviewer then asked whether that "sound[ed] fair," and B.M. answered "Yes." *Id.* at 514. Based on B.M.'s agreement that she would not lie during the interview, we do not agree that the circumstances precluded a reasonable officer from crediting the statements she made.

Moreover, officers corroborated some details in the statements before arresting Jimenez. For example, B.M. told her guidance counselor that her neighbor, who worked as a detective, was the person who touched her. An officer learned later that day that Jimenez was B.M.'s neighbor and worked as an NYPD detective at that time. And during the interview with the assistant district attorney, B.M.'s mother stated that B.M. spent most weekends at Jimenez's apartment. In light of this context, we cannot say that "no reasonably competent officer" could have credited B.M.'s statements and determined that there was probable cause to arrest Jimenez. *Figueroa*, 825 F.3d at 100 (quoting *Malley*, 475 U.S. at 341).

7

Second, Jimenez argues that inconsistencies between the incident B.M. described to her guidance counselor and the incidents she described during her forensic interview undermined her credibility. Again, we disagree. B.M.'s statements during her forensic interview were generally consistent with the conduct she reported to her guidance counselor earlier that day. A reasonable officer could have regarded B.M.'s discussion of additional instances of abuse during her forensic interview as a child victim becoming more comfortable during the course of the interview and more willing to disclose the extent of her abuse. *See Robison v. Via*, 821 F.2d 913, 920 (2d Cir. 1987) (noting that a "sexually abused child frequently will refuse at first to admit the fact of sexual molestation"). We agree with the district court that the purported inconsistencies were "minor variations" that did not render B.M.'s statements so unreliable that no reasonable officer could have believed there was probable cause to arrest Jimenez. *Jimenez*, 2024 WL 198319, at *6; *see also Walz v. Randall*, 2 F.4th 1091, 1101-02 (8th Cir. 2021) (concluding that inconsistencies in a sixteen-year-old's account of an alleged sexual assault, including those stemming from a second interview during which the victim provided more details, were not "fatal to a finding of probable cause").

8

Jimenez suggests that the district court erred by relying on *Doe v. Pisani*, No. 21-2847, 2023 WL 4240987 (2d Cir. June 29, 2023), pointing to several factual differences between *Pisani* and this case. But the district court did not say that *Pisani* was identical to this case. Instead, the district court believed that the reasoning of *Pisani* "indicates that arguable probable cause can exist in child sex-abuse cases even when there is a possible reason to question the account of the child reporting the abuse." *Jimenez*, 2024 WL 198319, at *5. That is correct. We held in *Pisani* that officers were entitled to credit a child's allegations even though the child later recanted. *Pisani*, 2023 WL 4240987, at *4. A recantation provides a more compelling reason to doubt an initial account than inconsistencies between accounts. We see no error in the district court's reliance on the holding of *Pisani*.

**IV**

The defendants had arguable probable cause even though the grand jury later declined to indict Jimenez and the defendants could have made a greater effort to corroborate B.M.'s statements. "[P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful. It is therefore of no consequence that a more thorough or more probing investigation might have cast doubt upon the situation." *Fabrikant*, 691 F.3d at 214-

9

15 (quoting *Krause v. Bennett*, 887 F.3d 362, 371 (2d Cir. 1989)). Indeed, "once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (alteration omitted) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)).

B.M.'s statements provided the defendants with a reasonable basis for believing that there was probable cause to arrest Jimenez. And because no "exculpatory facts" became known to the defendants between Jimenez's arrest and the initiation of his prosecution, the defendants also had arguable probable cause with respect to his malicious prosecution claim. *Kirschner*, 288 F. App'x at 726. Accordingly, the defendants are entitled to qualified immunity on both claims and the district court properly granted summary judgment.

\*    \*    \*

We have considered Jimenez's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court